IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION


ANTONIO FREEMAN          )
          )
    v.              )     NO. 3:11-0867
          )     Consolidated with:
DEE DAVID GAY, et al.     )     3:11-1094


TO:  Honorable Kevin H. Sharp, District Judge


# R E P O R T   A N D   R E C O M E N D A T I O N

By Order entered September 16, 2011 (Docket Entry No. 5), this action was referred to the

Magistrate Judge to enter a scheduling order for management of the case, to dispose or recommend

disposition of any pretrial motions under 28 U.S.C. §§ 636(b)(1)(A) and (B), and to conduct further

proceedings, if necessary, under Rule 72(b) of the Federal Rules of Civil Procedure and the Local

Rules of Court.

By Order entered February 2, 2012, the Court consolidated the instant action ("Freeman I")

with another action filed by the plaintiff, Antonio L. Freeman v. Dee David Gay, et al., 3:11-1094

("Freeman II").  See Docket Entry No. 11 in Freeman II.[1]

Presently pending before the Court are several motions filed by the parties in the

consolidated actions:

> 1.     Plaintiff's two motions to amend (Docket Entry No. 8 and Docket Entry
> No. 8 in Freeman II);
>
> 2.     Plaintiff's motion for review (Docket Entry No. 13);

---

[1] All references to "Docket Entry" in this Report and Recommendation are to docket entries
made in Freeman I unless otherwise specifically noted.

3.      Motion to dismiss by Rick Cooper and Sherry Taft (Docket Entry No. 17);

4.      Motion to dismiss by Dee David Gay (Docket Entry No. 22);

5.      Motion to dismiss by Sidney Preston (Docket Entry No. 31);

6.      Motion to dismiss by Lytle J. James (Docket Entry No. 33);

7.      Motion to dismiss by Steve Daniel (Docket Entry No. 56);

8.      Motion to dismiss by Jo Ann Graves, James Stinson, and Gregory Washburn (Docket Entry No. 61);

9.      Plaintiff's Motion for injunctive relief (Docket Entry No. 77);

10.     Motion to dismiss of Don Franklin, Mahailiah Hughes, James Hunter, Jr., Tina Moore, Jennifer Rasnick, Sonya Troutt, and Sonny Weatherford (Docket Entry No. 92);

11.     Motion to dismiss by Lawrence Ray Whitley (Docket Entry No. 94);

12.     Motion to dismiss by Rhonda Martin (Docket Entry No. 97);

13.     Motion to dismiss by Christopher Ford, Bobby Harris, and Daniel Steakin (Docket Entry No. 112).

Also before the Court are the plaintiff's various responses to the dispositive motions filed by the defendants, see Docket Entry Nos. 57, 76, 81, 87, 88, 90, 99-101, and 115-118, and the responses of Defendants James and Gay to the plaintiff's motion for injunctive relief (Docket Entry Nos. 83-84), and the plaintiff's reply (Docket Entry No. 91). Set out below are the Court's recommendations for disposition of the motions.

## I. BACKGROUND

Although the Plaintiff is currently an inmate in the custody of the Tennessee Department of Correction ("TDOC"), the claims at issue in the consolidated actions are based upon events which

occurred prior to his becoming a TDOC inmate when he was both a free world citizen in Sumner County, Tennessee, and a pre-trial detainee at the Sumner County Jail ("Jail"). The plaintiff's filings are lengthy. The original complaints are 80 and 73 pages, respectively, and the plaintiff has made several other lengthy filings and "declarations." The plaintiff's allegations are made in a largely narrative fashion, his pleadings do not contain an easily discernable factual chronology, his specific claims are often not well-defined, and he repeatedly makes use of facts contained in exhibits instead of pleading factual allegations in support of his claims. Accordingly, determining the underlying factual background of the consolidated actions requires gleaning facts from the record, and the following rendition of the facts surrounding the plaintiff's claims is based on his complaints and various exhibits filed by the plaintiff.

The events at issue began on September 14, 2008, when the plaintiff was stopped by Gallatin Police Department ("GPD") Officers Daniel Steakin and Christopher Ford and arrested for the charge of Driving Under the Influence ("DUI").[2] He was released, presumably on bond, on that charge. Several months later, he was arrested by GPD Officer Bobby Harris on November 21, 2008, on charges of Possession of a Schedule II Drug (Cocaine) for Resale, Intent to Sell a Schedule II Drug, Possession of Marijuana, and Possession of Drug Paraphernalia. Subsequent to this arrest, the plaintiff was detained at the Jail because he was unable to satisfy the bond which was set by a judicial commissioner who reviewed the charges. The charge of Intent to Sell was subsequently dismissed after a preliminary hearing in January 2009. The plaintiff was later indicted on the other charges by the Sumner County Grand Jury, and the plaintiff's criminal cases were set before Sumner

_____

[2] It appears from the record that the plaintiff had a criminal history prior to September 14, 2008, but the exact nature of this history is not important for review of the claims at issue.

County Criminal Court Judge Dee David Gay. Lytle "Joe" James was the Assistant District Attorney prosecuting at least some of these charges on behalf of the State.

During 2009 and 2010, the plaintiff remained at the Jail as a pre-trial detainee while awaiting trial on the pending criminal charges. During this time period, he was appointed a succession of criminal defense attorneys. However, the plaintiff filed complaints with the Tennessee Board of Professional Responsibility against the attorneys, and each appointed attorney was eventually permitted to withdraw. Although he was continuously represented by appointed counsel, the plaintiff filed numerous pro se motions related to his criminal cases, all of which were denied by Judge Gay. On January 15, 2010, Judge Gay denied motions filed by the plaintiff's appointed counsel at the time, Lawren Lassiter, to reduce the plaintiff's bond and for Judge Gay to recuse himself from the case. During this time period, the plaintiff also filed a complaint with the Disciplinary Counsel for the Tennessee Court of the Judiciary against Judge Gay. Steve Daniel was the Disciplinary Counsel representative assigned to the plaintiff's complaint.

On July 8, 2010, a fight among inmates, including the plaintiff, occurred at the Jail. The next day, the plaintiff's cell was searched, and tobacco and pills were found inside a package of food in his cell. As a result of these events, the plaintiff was charged on July 19, 2010, with possession of contraband within a penal institution and with aggravated assault. The plaintiff was also placed in administrative segregation at the Jail, where he remained until October 12, 2010. Although the aggravated assault charge was subsequently dismissed by the State, the possession of contraband charge remained pending.

During 2010, attorney Lassiter was allowed to withdraw and Sidney Preston was appointed to represent the plaintiff. On October 13, 2010, the plaintiff went to trial on the three pending drug

charges and was acquitted by a jury. However, the plaintiff remained confined at the jail as a pre-trial detainee on the DUI charge, which had not yet been tried, and on the possession of contraband charge. At some point, the plaintiff was released from the Jail on a bond on those charges.

On June 26, 2011, he was stopped by GPD Officers James Stinson and Gregory Washburn and arrested on charges of possession of a Schedule II Drug, evading arrest, driving on a suspended license, and reckless endangerment. He was released from the Jail on June 30, 2011, on a $25,000 appearance bond posted by Free Bird Bail Bonds. A hearing was subsequently held before Judge Gay on the State's motion to revoke or increase the bond and it appears that the plaintiff's bond was increased to $100,000 and he was returned to the Jail as a pretrial detainee. By this time, Preston had been replaced by James Hawkins as appointed defense counsel for the plaintiff.

On September 27, 2011, the plaintiff was acquitted of the DUI charge after a jury trial. However, Judge Gay found him guilty of violating the implied consent law and his driver's license was revoked for one year. On October 14, 2011, an execution was issued by Jennifer Resnick, a deputy clerk for the Sumner County Clerk's Office, seeking $1,024.14 for judgments entered on September 27, 2011, and on November 4, 2011, the plaintiff received a letter from the Sumner County Clerk's Office informing him that he owed fees of $433.14 as court costs for the judgments entered on September 27, 2011.

On October 13, 2011, the plaintiff's counsel sought a reduction of his bond based on his acquittal on the DUI charge, but the disposition of that motion is not clear from the record. On December 6, 2011, the plaintiff was found guilty by a jury of the charge of possession of contraband in a penal facility, and was sentenced to the custody of the TDOC. The current status of the four charges resulting from the arrest on June 26, 2011, is unknown.

5

In the midst of these events, the plaintiff began filing pro se and in forma pauperis civil rights complaints in this Court against many of the individuals with whom he came into contact as an arrestee and pre-trial detainee. The lead action in the consolidated cases, Antonio Freeman v. Dee David Gay, et al., 3:11-0867 ("Freeman I"), was filed on September 13, 2011, against fifteen individuals: Judge Dee David Gay, Gallatin Mayor Jo Ann Graves, bail bondsmen employees Rick Cooper and Sherry Taft, Judge James Hunter, Jr., Assistant District Attorney Lytle J. James, GPD Officers James Stinson and Gregory Washburn, Jail employees Adriel Riker, Lance Moring, Jack Babbit, and Nurse "Litisha," Jail Administrator Sonya Troutt, Disciplinary Counsel Steve Daniel, and attorney Sidney Preston. The plaintiff brings his action under 42 U.S.C. § 1983 seeking several million dollars in damages, as well as declaratory and injunctive relief, based on claims that his federal constitutional rights have been violated. The claims set out in Freeman I revolve primarily around: 1) actions taken by Defendants Gay, Hunter, James, Preston in the criminal proceedings involving the plaintiff in Sumner County; 2) actions taken by Defendants Cooper and Taft concerning appearance bonds; 3) actions taken by Defendant Daniel in his handling of the judicial complaint made by the plaintiff against Defendant Gay; 4) actions taken by Defendants Stinson and Washburn in the arrest of the plaintiff on June 30, 2011; 5) actions taken by Defendants Riker, Moring, Babbit, "Litisha," and Troutt during the plaintiff's confinement at the Jail in 2011; and 6) the actions of Defendant Graves as Mayor of Sumner County.

The complaint in Freeman II was filed on November 15, 2011, and also seeks damages, declaratory, and injunctive relief and is brought under Section 1983 for alleged violations of the plaintiff's federal constitutional rights. Named as defendants in Freeman II are five defendants who are also named in Freeman I – Gay, Hunter, James, Preston, and Troutt – as well as ten newly named

defendants -- GPD Officers Daniel Steakin, Christopher Ford, and Bobby Harris, Sumner County Circuit Court Clerk Mahailia Hughes, Deputy Clerk Jennifer Rasnick, Judicial Assistant Rhonda Martin, District Attorney Ray Whitley, Sumner County Grand Jury foreman Don Franklin, Sumner County Sheriff Sonny Weatherford, and Jail employee Tina Moore. The claims in Freeman II revolve around: 1) the actions of Defendants Gay, Hunter, James, and Preston related to the DUI charge for which the plaintiff was acquitted; 2) the actions of Defendants Troutt and Weatherford related to the plaintiff's continued confinement at the Jail subsequent to his acquittal on the DUI charge; 3) the actions of Defendants Whitley, Franklin, and Hughes related to the grand jury proceedings; 4) the actions of Defendants Steakin and Ford in arresting the plaintiff for the DUI charge on September 14, 2008; 5) the actions of Defendant Martin in not providing plaintiff a copy of a document which he requested; 6) the actions of Defendants Hughes, Moore, and Rasnick related to charges for court costs sent to the plaintiff after his September 2011, trial; and 7) actions taken by Defendant Harris in May 2011.

In addition to the claims brought against the 25 defendants named in his initial complaints, the plaintiff seeks to add five new defendants through two motions to amend. See Docket Entry No. 8 in Freeman I and Docket Entry Nos. 8 and 10 in Freeman II.

All originally named defendants other than nurse "Litisha" have been served in the action. Of the 24 served defendants, all but defendants Ricker, Moring, and Babbit have filed motions to dismiss the claims against them.

## II. STANDARD OF REVIEW

Each of the defendants' motions has been filed as a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. In review of these motions, the Court is mindful that Rule 12(d) of the Federal Rules of Civil Procedure mandates that if "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment, under Rule 56." Applying Rule 12(d) to the instant motions is not a particularly rote matter, however, because of the nature of the plaintiff's pleadings and his repeated references in the pleadings to numerous exhibits. Pursuant to Rule 10(c) of the Federal Rules of Civil Procedure, these exhibits to the pleadings are "a part of the pleadings for all purposes." Further, even if not attached as an exhibit to the pleadings, a document can be considered a part of the pleadings if it is referred to in the plaintiff's complaint and is central to the plaintiff's claims. See Weiner v. Klais & Co., Inc., 108 F.3d 86, 89 (6th Cir. 1997), overruled on other grounds, Swierkiwica v. Sorema, N.A., 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). Given these considerations, the rule of liberal construction to be applied to the filings of pro se litigants, and the clear intent of the defendants to challenge the plaintiff's claims via Rule 12(b)(6), the Court takes an expansive view of the parameters of the plaintiff's pleadings and sees no reason to convert the pending motions to motions for summary judgment brought under Rule 56 because of the consideration of any of the various exhibits in the record. Indeed, as set out supra, at 3, it is virtually impossible to put the plaintiff's claims in any factual context without reference to the exhibits.

A motion to dismiss brought under Rule 12(b)(6) is reviewed under the standard that the Court must accept as true all of the factual allegations contained in the complaint, resolve all doubts in the plaintiff's favor, and construe the complaint liberally in favor of the pro se plaintiff. See

Kottmyer v. Maas, 436 F.3d 684 (6th Cir. 2006); Boswell v. Mayer, 169 F.3d 384, 387 (6th Cir. 1999); Morgan v. Church's Fried Chicken, 829 F.2d 10, 11-12 (6th Cir. 1987). However, although the complaint need not contain detailed factual allegations, the plaintiff must provide the grounds for his entitlement to relief and this "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (abrogating Conley v. Gibson, 355 U.S. 41 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). See also Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

The factual allegations supplied must be enough to show a plausible right to relief. Twombly, 550 U.S. at 555-61. More than bare assertions of legal conclusions are required to withstand a motion to dismiss, and the complaint must contain either direct or inferential allegations respecting all of the material elements to sustain a recovery under some viable legal theory. Id.; Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 436-37 (6th Cir. 1988). The Court need not accept as true legal conclusions or unwarranted factual inferences. See Gregory v. Shelby Cnty., 220 F.3d 433, 446 (6th Cir. 2000), abrogated in part on other grounds, Buckhannon Bd. & Care Home, Inc. v. West Va. Dep't of Health & Human Res., 532 U.S. 598, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001). A complaint does not "suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 557). Additionally, it is the complaint itself which must be reviewed, and a plaintiff cannot amend his pleadings to set forth unpled claims through a response to a motion to dismiss. See Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1107 (7th Cir. 1984); Jocham v. Tuscola Cnty., 239 F.Supp.2d 714, 732 (E.D. Mich. 2003); Chambliss v. Coca-Cola Bottling Corp., 274 F.Supp. 401, 409 (E.D. Tenn. 1967), aff'd on

9

other grounds, 414 F.2d 256 (6th Cir.1969), cert. denied, 397 U.S. 916, 90 S.Ct. 921, 25 L.Ed.2d 97 (1970).

### III. CONCLUSIONS

Two issues that affect the plaintiff's consolidated actions without respect to any particular motion to dismiss or defendant require brief analysis.

First, any claims raised by the plaintiff which are based upon facts underlying his sentence and conviction for possession of contraband and which would call into question the legality of his conviction cannot be pursued by him in a civil action at this time regardless of whether the claims are styled as damages claims or claims for declaratory or injunctive relief.[3] Such claims are not cognizable under Section 1983 until the plaintiff has first successfully challenged his current conviction through federal or state appellate, habeas, or other collateral proceedings. Edwards v. Balisok, 520 U.S. 641, 648, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997); Heck v. Humphrey, 512 U.S. 477, 486-87, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). In Heck, the plaintiff was convicted in Indiana state court of voluntary manslaughter. While the appeal from his conviction was pending, that plaintiff filed a Section 1983 lawsuit alleging that the prosecutor and police "knowingly destroyed [evidence] which was exculpatory in nature and could have proved [petitioner's] innocence." Heck, 512 U.S. at 479 (citations omitted). In dismissing the plaintiff's claim, the Court noted that a Section 1983 civil tort action is not an appropriate mechanism for challenging the validity of an outstanding criminal judgment. Id. at 486.

---

[3] At various points in his filings, the plaintiff alleges that he was not indicted on the possession of contraband charge, that his double jeopardy rights were violated by his conviction on this charge, and that he was denied exculpatory evidence.

10

Second, any declaratory or prospective injunctive relief sought by the plaintiff regarding confinement at the Sumner County Jail has become moot because he is no longer held at the Jail. See Colvin v. Caruso, 605 F.3d 282, 289 (6th Cir. 2010); Kensu v. Haigh, 87 F.3d 172, 175 (6th Cir. 1996).

### A. Motion to Dismiss of Defendant Sidney Preston (Docket Entry No. 31)

The claims made against Defendant Preston in Freeman I and Freeman II are based entirely upon action Preston took as appointed defense counsel for the plaintiff in the state criminal proceedings. See Freeman I, Complaint (Docket Entry No. 1), at 32; Freeman II, Complaint (Docket Entry No. 1), at 16-17. After review of Defendant Preston's motion and the plaintiff's response in opposition (Docket Entry No. 87), the Court finds that the motion should be granted.

Acting under color of state law is an essential element for all claims brought under Section 1983. Flagg Bros. v. Brooks, 436 U.S. 149, 155, 98 S.Ct. 1729, 1732-33, 56 L.Ed.2d 185 (1978). The alleged actions of Defendant Preston cannot form the basis for claims under 42 U.S.C. § 1983 because attorneys do not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding. Polk Cnty. v. Dodson, 454 U.S. 312, 325, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981); Stamper v. Bouldin, 2002 WL 311119693, 46 Fed. Appx. 840, 841 (6th Cir. Sept. 24, 2002).[4] Because the plaintiff cannot satisfy this threshold

---

[4] Although the Sixth Circuit Court of Appeals recognized in Powers v. Hamilton Cnty. Pub. Defender Comm'n, 501 F.3d 592, 612 (6th Cir. 2007), that there is an exception to the rule in Polk for claims based on allegations that a public defender acted in an administrative or policy making role, such allegations are not made against Defendant Preston in this case.

11

requirement, his Section 1983 claims against Defendant Preston warrant dismissal as a matter of law.[5]

The plaintiff also appears to assert a claim against Defendant Preston for legal malpractice under state law. However, upon the dismissal of the plaintiff's Section 1983 claims against Defendant Preston, the Court should decline to exercise supplemental jurisdiction over this state law claim. 28 U.S.C. § 1367(c)(3) permits a district court to decline to exercise supplemental jurisdiction when it has dismissed all claims over which it has original jurisdiction. The decision of whether to retain jurisdiction over state law claims upon the dismissal of the federal law claims asserted in an action is left to the broad discretion of the Court. See Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350-52, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988); Musson Theatrical, Inc. v. Federal Express Corp., 89 F.3d 1244, 1254 (6th Cir. 1996). In considering whether to continue to exercise supplemental jurisdiction over such state law claims, the Court must consider the provisions of Section 1367(c) and the factors the United States Supreme Court outlined in Cohill, 484 U.S. at 350- 51, and United Mine Workers v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). These factors include judicial economy, convenience, fairness, and comity. Cohill, 484 U.S. at 350. Although not mandatory or absolute, the general rule is to decline to exercise jurisdiction over supplemental state law claims when all federal claims are eliminated from a case before trial. Musson, 89 F.3d at 1254-55 (gathering cases from the Sixth Circuit Court of Appeals that follow the general rule). In the instant action, the balance of factors weighs in favor of not retaining supplemental jurisdiction over the plaintiff's state law claim against Defendant Preston.

_____

[5] Because the Court finds that the plaintiff fails to satisfy the color of state law requirement for his Section 1983 claims against Defendant Preston, it is not necessary to address the defendant's alternative arguments for dismissal.

<u>B. Motion to Dismiss of Defendant Steve Daniel (Docket Entry No. 56)</u>

The plaintiff's claims against Defendant Daniel are based solely upon Daniel's involvement with the plaintiff's complaint to the Tennessee Court of the Judiciary about alleged judicial misconduct by Judge Gay. See <u>Freeman I</u>, Complaint (Docket Entry No. 1), at 10, 14-15, 18-19 and 30-31. In essence, the plaintiff alleges that Daniel's failure to find misconduct on the part of Judge Gay caused the plaintiff to suffer violations of his constitutional rights because of the actions of Judge Gay. After review of Defendant Daniel's motion and the plaintiff's response in opposition (Docket Entry No. 81), the Court finds that the motion should be granted.

The plaintiff's Section 1983 claims against Defendant Daniel should be dismissed because they were not timely filed. Because Congress did not establish a limitations period applicable to civil rights actions under 42 U.S.C. § 1983, federal courts look to analogous state statutes of limitations to determine the applicable statute of limitations. See <u>Wilson v. Garcia,</u> 471 U.S. 262, 268-71, 276, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985); <u>Southerland v. Hardaway Mgmt. Co., Inc.,</u> 41 F.3d 250, 253 (6th Cir. 1995). For all Section 1983 actions, federal courts apply the personal injury statute of limitations which would apply under state law. See <u>Wilson,</u> 471 U.S. at 280; <u>Eidson v. State of Tenn. Dep't of Children's Servs.,</u> 510 F.3d 631, 634 (6th Cir. 2007). The statute of limitations for personal injury arising in Tennessee and brought under federal civil rights statutes is one year. See Tenn. Code Ann. § 28-3-104(a)(3); <u>Merriweather v. City of Memphis,</u> 107 F.3d 396, 398 (6th Cir. 1997); <u>Jackson v. Richards Med. Co.,</u> 961 F.2d 575, 578 (6th Cir. 1992); <u>Berndt v. Tennessee,</u> 796 F.2d 879, 883 (6th Cir. 1986). Although the duration of the applicable statute of limitations for Section 1983 claims is governed by state law, the question of when the statute of limitations begins to run is determined by federal law. See <u>Wilson,</u> 471 U.S. at 268-71; <u>Eidson,</u> 510 F.3d at 635;

13

Sevier v. Turner, 742 F.2d 262, 272 (6th Cir. 1986). Generally, a limitations period begins to run when a plaintiff knew or should have known of the injury that forms the basis of the claim. Ruff v. Runyon, 258 F.3d 498, 500 (6th Cir. 2001).

The plaintiff's complaint of judicial misconduct was made sometime in January 2010, and Defendant Daniel indicates through attachments to his motion that review of the complaint was closed on April 6, 2010, without action against Judge Gay. See Docket Entry No. 56-1. In his response, the plaintiff does not dispute these facts. Thus, any claims based on allegations that Daniel did not perform a proper investigation accrued no later than the closing of the judicial misconduct complaint in April 2010, and the plaintiff had one year from then to file claims against Defendant Daniel. However, the instant complaint was not filed until September 13, 2011, and is untimely by several months.

The only argument offered by the plaintiff to rebut the statute of limitations defense is that he was not injured until October 14, 2011, when he was acquitted of the DUI charge and, thus, he had one year from that date within which to file his claims. See Docket Entry No. 81, at 2. This argument lacks merit. As set out above, the plaintiff was clearly aware of the factual basis for any claims against Defendant Daniel by April 2010. The date of the ultimate resolution of the DUI charge has no bearing on the date of accrual of the claims against Daniel.

Dismissal of the plaintiff's claims against Defendant Daniel is also warranted because the plaintiff's allegations simply fail to state a claim under Section 1983. Although the plaintiff proclaims that Defendant Daniel violated his Fifth, Eighth, and Fourteenth Amendment rights, he fails to show how Daniel violated any constitutional right of the plaintiff or how a cognizable constitutional claim arises from Defendant Daniel's failure to find in favor of the plaintiff on his

14

complaint of judicial misconduct.  See Koukios v. Ganson, 229 F.3d 1152, 2000 WL 1175499 (6th Cir. Aug. 11, 2000).

The plaintiff's allegations against Defendant Daniel are couched solely in terms of violations of his federal constitutional rights.  However, to the extent that the complaint can be read to assert a state law claim against Daniel, the Court should decline to extend supplemental jurisdiction over any such claim for the reason set out supra, at Section III(A).

### C. Motion to Dismiss of Defendant Dee David Gay (Docket Entry No. 22)[6]

The claims made against Defendant Gay in Freeman I and Freeman II are based entirely upon actions taken by Defendant Gay as the state judge presiding over the plaintiff's criminal proceedings.  The plaintiff alleges that Defendant Gay engaged in various forms of judicial misconduct.  For example, he asserts that Defendant Gay has a personal bias against the plaintiff and failed to recuse himself from the plaintiff's criminal cases, denied the plaintiff a speedy trial, set excessive bail, refused to hear pro se  motions and belittled the plaintiff, threatened the plaintiff with, and held him in, contempt of court, held him on criminal charges despite a lack of probable cause and faulty indictments, and kept alive criminal proceedings against the plaintiff despite a jury acquittal on the DUI charge.  See Freeman I, Complaint, at 10, 19, and 24-25; Freeman II, Complaint, at 13-14.  After review of Defendant Gay's motion and the plaintiff's response in opposition (Docket Entry No. 57), the Court finds that the motion should be granted.

---

[6] Defendants Gay, James, and Preston are named in both Freeman I and Freeman II.  The Court has addressed all claims made against them even though their respective  motions to dismiss were filed in Freeman I prior to consolidation of the actions and were not supplemented to address the allegations made in Freeman II

Judicial officers generally are absolutely immune from civil suits for monetary damages bought against them based upon their judicial actions. Mireles v. Waco, 502 U.S. 9, 9-10, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991). The rationale for granting judicial officers absolute immunity when they act in their judicial capacities is that judicial officers should be free to make decisions and act upon their convictions without fear of personal liability. Stump v. Sparkman, 435 U.S. 349, 355-56, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978); Cooper v. Parrish, 203 F.3d 937, 944 (6th Cir. 2000). As the United States Supreme Court has explained:

> If judges were personally liable for erroneous decisions, the resulting avalanche of suits, most of them frivolous but vexatious, would provide powerful incentives for judges to avoid rendering decisions likely to provoke such suits. The resulting timidity would be hard to detect or control, and it would manifestly detract from independent and impartial adjudication . . . . Most judicial mistakes or wrongs are open to correction through ordinary mechanisms of review, which are largely free of the harmful side-effects inevitably associated with exposing judges to personal liability.

Forrester v. White, 484 U.S. 219, 226-27, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988) (internal citations omitted).

The protection provided by absolute judicial immunity is an immunity from suit and is not overcome by a plaintiff's allegations of bad faith or malice on the part of the judicial officer. Mireles, 502 U.S. at 11; Forrester, 484 U.S. at 227; Brookings v. Clunk, 389 F.3d 614, 617 (6th Cir. 2004). The United States Supreme Court has held that as long as a judge has jurisdiction to perform the "general act" in question, he or she is immune "however erroneous the act may have been, and however injurious in its consequences it may have proved to the plaintiff" and irrespective of the judge's motivation. Cleavinger v. Saxner, 474 U.S. 193, 199-200, 106 S.Ct. 496, 88 L.Ed.2d 507 (1985), citing Bradley v. Fisher, 13 Wall. 335, 347, 20 L.Ed. 646 (1872).

16

The plaintiff has not set forth any allegations supporting a conclusion that the challenged actions of Defendant Gay were not actions of a judicial in nature or that Judge Gay was without jurisdiction to act in the plaintiff's criminal cases. The plaintiff's dissatisfaction with the manner in which Judge Gay conducted the criminal proceedings simply does not negate the shield of judicial immunity, and the plaintiff has not set forth any arguments which rebut the legal authority that supports dismissal of the damage claims brought against Defendant Gay.

To the extent that the plaintiff sues Defendant Gay in his official capacity, any such claims also warrant dismissal. In an official capacity action, the plaintiff seeks damages not from the individually named defendant, but from the entity for which the defendant is an agent, Pusey v. City of Youngstown, 11 F.3d 652, 657 (6th Cir. 1993), and "an official capacity suit is, in all respects other than name, to be treated as a suit against the entity." Kentucky v. Graham, 473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). Accordingly, the plaintiff's claims against Defendant Gay in his official capacity as a judicial officer is essentially a claim against the State of Tennessee. See Johns v. Bonnyman, 109 Fed. Appx. 19, 2004 WL 1791396 (6th Cir. Aug. 6, 2004). However, the Eleventh Amendment bars a plaintiff from suing a state, a state agency, or any of its employees in their official capacities for monetary damages on civil rights claims. Kentucky v. Graham, 473 U.S. at 169; Turker v. Ohio Dep't. of Rehab. & Corr., 157 F.3d 453, 456 (6th Cir. 1998). Additionally, neither a State nor an official acting in his official capacity is a "person" for the purposes of a suit brought under Section 1983. Will v. Michigan Dep't. of State Police, 491 U.S. 58, 109 S.Ct. 2304, 2311-12, 105 L.Ed.2d 45 (1989); Hardin v. Straub, 954 F.2d 1193, 1198 (6th Cir. 1992).

The plaintiff's requests for declaratory and injunctive relief are also not sufficient to prevent his claims against Defendant Gay from being dismissed. Even though absolute judicial immunity

17

does not protect a defendant from claims for prospective injunctive or declaratory relief, see Pulliam v. Allen, 466 U.S. 522, 541-43, 104 S.Ct. 1970, 80 L.Ed.2d 565 (1984), and a state employee may be sued for such relief in his official capacity, see Thiokol Corp. v. Department of Treasury, State of Michigan, 987 F.2d 376, 381 (6th Cir. 1993), the plaintiff does not set out viable claims for declaratory or injunctive relief. He has not shown that there is a real and immediate threat that he will suffer a future injury due to the alleged wrongdoing. Thus, he has no standing to seek prospective injunctive relief. See City of Los Angeles v. Lyons, 461 U.S. 95, 102-09, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983); Blakely v. United States, 276 F.3d 853, 873-74 (6th Cir. 2002); Williams v. Ellington, 936 F.2d 881, 889 (6th Cir. 1991). The plaintiff's past exposure to alleged illegal conduct "does not in itself show a present case or controversy regarding injunctive relief." O'Shea v. Littleton, 414 U.S. 488, 495, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974). Similarly, the plaintiff's request for declaratory relief lacks merit because there is not an actual and continuing controversy between the parties that would cause an immediate and real threat of injury to him. City of Los Angeles, 461 U.S. at 102; Emory v. Peeler, 756 F.2d 1547, 1552 (11th Cir. 1985). There is simply no actual controversy between the parties that calls for a declaration of the rights and other legal relations of the parties. See 28 U.S.C. § 2201; Grand Trunk W. R.R. Co. v. Consolidated Rail Co., 746 F.2d 323, 326 (6th Cir. 1984). Furthermore, the plaintiff's claims for injunctive and declaratory relief relate directly to the criminal proceedings brought against him and not to any present case or controversy between the plaintiff and Defendant Gay which is unrelated to these criminal proceedings. As such, declaratory or prospective injunctive relief is not warranted. See Savoie v. Martin, 673 F.3d 488 (6th Cir. 2012). Additionally, to the extent that the plaintiff seeks this Court's intervention in state criminal proceedings which are not yet final, federal courts

18

generally abstain from intervening in pending state criminal proceedings.  See Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).  The plaintiff has not shown the existence of extraordinary circumstances that justify disregarding the principle of Younger abstention.

To the extent that the plaintiff's allegations against Defendant Gay can be read to assert a state law claim against Gay, the Court should decline to extend supplemental jurisdiction over any such claim for the reasons set out supra, at Section III(A).


### D. Motion to Dismiss of Defendant Lytle A. "Joe" James (Docket Entry No. 33)

The claims made against Defendant James in Freeman I and Freeman II are based entirely upon actions taken by Defendant James as the state prosecutor in criminal proceedings brought against the plaintiff.[7]  For example, the plaintiff alleges that Defendant James maliciously prosecuted him, prevented him from having a speedy trial, sought to keep the plaintiff confined by seeking excessive bail or seeking to revoke his bail, falsified a true bill of indictment against him, tampered with evidence, and did not provide mitigating and exculpatory evidence to his defense attorney.  See Freeman I, Complaint, at 10-12 and 29; Freeman II, Complaint, at 16.  After review of Defendant James's motion and the plaintiff's response in opposition (Docket Entry No. 90), the Court finds that the motion should be granted.

A prosecuting attorney is entitled to absolute prosecutorial immunity for any actions taken within the scope of his duties in prosecuting criminal charges against a criminal defendant.  Imbler v. Pachtman, 424 U.S. 409, 420, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976); Ireland v. Tunis, 113 F.3d

---

[7] It is clear from the plaintiff's allegations that Defendant James was the prosecutor on the plaintiff's DUI charge and the possession of contraband charge.  It is less clear whether Defendant James prosecuted the plaintiff on any of the other criminal charges.

19

1435, 1446-47 (6th Cir. 1997). Even given a reading that is most favorable to the plaintiff, the actions of Defendant James are all actions intimately associated with the judicial phase of the criminal process and which James took in the role as an advocate for the state in the prosecution of criminal charges. As such, his actions are protected by absolute prosecutorial immunity. See Burns v. Reed, 500 U.S. 478, 486, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991); Imbler, supra; Koubriti v. Convertino, 593 F.3d 459, 467 (6th Cir. 2010); Cady v. Arenac Cnty., 574 F.3d 334, 340 (6th Cir. 2009).

The shield of prosecutorial immunity applies irrespective of the plaintiff's allegations of illegal or improper conduct on the part of Defendant James in the criminal prosecution. Prosecutorial immunity protects prosecutors from liability even if their acts were in error, were wrongful, or were done maliciously. Imbler, 424 U.S. at 413, 430 (holding that a prosecutor accused of knowingly presenting false testimony at trial is protected by absolute immunity); Grant v. Hollenbach, 870 F.2d 1135, 1138 (6th Cir. 1989) (holding that prosecutor was absolutely immune from claims of conspiracy to bring false charges, failure to investigate, and falsely obtaining an indictment); Jones v. Shankland, 800 F.2d 77, 80 (6th Cir. 1986) (holding that a prosecutor's alleged "use of perjured testimony [,] the non-disclosure of exculpatory information[,] ... conflict of interest problems [,] and ... spy allegations" are all "related to the acts of an advocate and thus come within the area of prosecutorial immunity"); Heidelberg v. Hammer, 577 F.2d 429, 432 (7th Cir. 1978) (holding that a prosecutor is absolutely immune from a suit claiming that he destroyed and falsified evidence).

The plaintiff also sues Defendant James in his official capacity. However, because James acts as an agent of the State of Tennessee while engaging in prosecutorial duties, see Memorandum

20

in Support (Docket Entry No. 34), at 6, the official capacity claims are essentially claims against the State of Tennessee. Accordingly, for the reasons set herein, <u>supra</u> at Section III(C), the plaintiff's claims against Defendant James in his official capacity warrant dismissal as a matter of law. <u>See also</u> <u>Cady</u>, 574 F.3d at 342-44. For essentially the same reasons as set out herein, <u>supra</u>, at Section III(C), the plaintiff's requests for declaratory and prospective injunctive relief are also not sufficient to prevent his claims against Defendant James from being dismissed.

To the extent that the plaintiff's allegations against Defendant James can be read to assert a state law claim against James, the Court should decline to extend supplemental jurisdiction over any such claim for the reasons set out <u>supra</u>, at Section III(A).


E. Motion to Dismiss of Defendant Ray Whitley (Docket Entry No. 94)

The claims made against Defendant Whitley in <u>Freeman II</u> are based entirely upon actions taken by Defendant Whitley as the state District Attorney General for the Eighteenth Judicial District. The plaintiff alleges that Defendant Whitley "is guilty of tampering and fraudulent signing off on fraudulent developed true bills, with no exculpatory or sufficient evidence to prosecute" and "conspiring" with Defendant Judge Dee Gay. <u>See</u> <u>Freeman II</u>, Complaint, at 17. After review of Defendant Whitley's motion and the plaintiff's response in opposition (Docket Entry No. 117), the Court finds that the motion should be granted.

Because the alleged actions of Defendant Whitley are intimately associated with the judicial process and the initiation and prosecution of criminal charges, Defendant Whitley is entitled to prosecutorial immunity from any damage claims brought against him in his individual capacity. <u>Supra</u>, at Section III(D). Further, for the same reasons as set out <u>supra</u>, at Section III(D), with

21

respect to the claims brought against Defendant James, the official capacity claims against Defendant Whitley and the claims for declaratory and injunctive relief also warrant dismissal.

To the extent that the plaintiff's allegations against Defendant Whitley can be read to assert a state law claim against Whitley, the Court should decline to extend supplemental jurisdiction over any such claim for the reason set out <u>supra</u>, at Section III(A).


### F. Motion to Dismiss of Defendant Rhonda Martin (Docket Entry No. 97)

The plaintiff accuses Defendant Martin of being "guilty of conspiring in extortion, kidnapping, and a personal tort of the previous (unlawful detention) of pltf. on false pretense for denying plaintiff a copy of a return true bill in case No. Cr. 820-2010 to show how pltf. is being initially held of such offense against liberty." <u>See</u> <u>Freeman II</u>, Complaint, at 15. In his complaint, the plaintiff makes no specific factual allegations supporting these claims, and the only factual underpinning for the claims that can be gleaned from the complaint comes from an exhibit to the complaint. <u>See</u> Docket Entry No. 1, at 44. In a letter, dated October 12, 2011, Defendant Martin, as the judicial assistant to Judge Dee Gay, informed the plaintiff that Judge Gay had received a letter from the plaintiff but would not entertain <u>pro</u> <u>se</u> pleadings because the plaintiff was represented by counsel, that the letter would be placed in the court file, and that a copy of the plaintiff's letter and Martin's response would be sent to the plaintiff's defense counsel and the prosecutor in the case. <u>Id</u>. After review of Defendant Martin's motion and the plaintiff's response in opposition (Docket Entry No. 118), the Court finds that the motion should be granted.

First and foremost, the plaintiff's complaint fails to set out any factual allegations of wrongdoing against Defendant Martin that support a cognizable claim for relief under Section 1983.

Case 3:11-cv-00867   Document 120   Filed 06/07/12   Page 22 of 48 PageID #: 871

Section 1983 is not self-executing nor is it a vehicle for complaining about every act which the plaintiff believes aggrieved him. Section 1983 merely provides a method for vindicating federal rights elsewhere conferred, and the threshold requirement for any claim brought under Section 1983 is to identify the specific constitutional right allegedly infringed. Albright v. Oliver, 510 U.S. 266, 271, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994). The plaintiff fails to satisfy this requirement with respect to Defendant Martin, and it escapes the Court how her response to the plaintiff's letter rises to the level of a constitutional violation.

Furthermore, Defendant Martin's act of responding to the plaintiff's letter on behalf of Judge Gay is an act protected by quasi-judicial immunity because Martin was clearly acting in her role as a judicial assistant and was performing a task that was integral to or intertwined with the judicial process. See Lyle v. Jackson, 49 Fed. Appx. 492, 2002 WL 31085181 (6th Cir. Sept. 2002) (quasi-judicial immunity applied to court clerks who failed to provide prisoner with copies of previous filings and transcripts); Bush v. Rauch, 38 F.3d 842, 847 (6th Cir. 1994); Jonaitis v. Morrison, 2008 WL 151252 (W.D. Mich. Jan. 14, 2008) (collecting cases from the Sixth Circuit in which court employees were protected by quasi-judicial immunity)

To the extent that the plaintiff sues Defendant Martin in her official capacity, such a claim warrants dismissal for the reasons set out supra, at Section III(C). The plaintiff has likewise not set forth any basis for a cognizable claim for declaratory or prospective injunctive relief against Defendant Martin and such claims should be dismissed for the reasons set out supra, at Section III(C). The plaintiff's allegations against Defendant Martin do not refer to state law claims. However, to the extent that the complaint can be read to assert a state law claim against Martin, the

Case 3:11-cv-00867   Document 120   Filed 06/07/12   Page 23 of 48 PageID #: 872

Court should decline to extend supplemental jurisdiction over any such claim for the reason set out supra, at Section III(A).

### G. Motion to Dismiss of Defendants Jo Ann Graves, James Stinson, and Gregory Washburn (Docket Entry No. 61)

The plaintiff sues Gallatin Police Department officers Stinson and Washburn based on their arrest of him on June 26, 2011. He contends that both defendants used unnecessary force against him, "racially assaulted" him, and libeled him, and that Defendant Stinson also falsely arrested him and planted drugs on him. See Freeman I, Complaint at 9, 12 and 29. The plaintiff sues Gallatin Mayor Jo Ann Graves based on numerous allegations which essentially accuse her of negligence in failing to ensure that the constitutional rights of the citizens of Gallatin are not violated, of not intervening to protect the plaintiff from the wrongful actions of the other defendants, of not ensuring that the plaintiff receive a victim's compensation check, and of conspiring with judicial officials and others to violate the plaintiff's constitutional rights and to permit the illegal seizure of money from the plaintiff and other citizens. See Freeman I, Complaint at 25-27. After review of the Defendants' motion and the plaintiff's response in opposition (Docket Entry No. 88), the Court finds that the motion should be granted as to Defendant Graves and granted in part as to Defendants Stinson and Washburn as set out below.

The plaintiff's complaint should be dismissed as to Defendant Graves for failure to state a claim upon which relief can be granted. It is well-settled that a defendant cannot be held liable under Section 1983 for constitutional violations absent a showing that the defendant was personally involved in some manner in the allegedly unconstitutional conduct. Hardin, 954 F.2d at 1196. The plaintiff must show that Defendant Graves personally participated in, or otherwise authorized,

24

approved, or knowingly acquiesced in, the allegedly unconstitutional conduct. Greene, 310 F.3d 889 at 899; Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999), cert. denied, 530 U.S. 1264, 120 S.Ct. 2724, 147 L.Ed.2d 988 (2000); Leach v. Shelby Co. Sheriff, 891 F.2d 1241, 1246 (6th Cir. 1989). Despite devoting several pages of his complaint to claims against Defendant Graves, the plaintiff fails to provide a factual basis for a claim that Graves violated the plaintiff's constitutional rights in any manner.

First, the complaint does not contain a single allegation showing that Defendant Graves had any personal or direct involvement with the plaintiff, and defendant Graves' status as Mayor of the City of Gallatin does not render her personally liable for the acts of those who work in some capacity for the City of Gallatin because respondeat superior is not a basis for liability under section 1983. Monell v. Department of Soc. Servs., 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); Rizzo v. Goode, 423 U.S. 362, 371-72, 375-77, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976). A claimed constitutional violation must be based upon active unconstitutional behavior. Greene v. Barber, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. Id. Allegations that Defendant Graves did not take after-the-fact action upon complaints about wrongdoing do not satisfy the requirement of alleging personal involvement on her part. The plaintiff offers no factual basis for his conclusion that Graves, as the Mayor of the City of Gallatin, had authority to take any type of remedial action concerning the wrongdoings of other actors or that her receipt of grievances, complaints, or notices created a duty to investigate to the extent that constitutional liability could be imposed upon her personally. See Shehee, supra; Bellamy v. Bradley, 729 F.2d 416, 421 (6th Cir. 1984).

Second, to state a claim for relief, "[t]he factual allegations, assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement to relief." League of United Latin Am. Citizens v. Bredesen, 500 F.3d 523, 527 (6th Cir. 2007) (citing Twombly, 550 U.S. at 555). The plaintiff's assertions of negligence on the part of Graves do not show an entitlement to relief because negligent conduct does not state a viable claim under Section 1983. See Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); Walker v. Norris, 917 F.2d 1449, 1454 (6th Cir. 1990); Roberts v. City of Troy, 773 F.2d 720, 724 (6th Cir. 1985). Further, despite the plaintiff's assertions of egregious wrongdoings, the plaintiff's factual allegations concerning Defendant Graves are conclusory, vague, and speculative and fail to show an entitlement to relief. Such allegations are simply insufficient to support claims under Section 1983, see Chapman v. City of Detroit, 808 F. 2d 459, 465 (6th Cir. 1986); Smith v. Rose, 760 F.2d 102, 106 (6th Cir. 1985), and allegations of a conspiracy must be pled with specificity and have factual support. See Spadafore v. Gardner, 330 F.3d 849, 854 (6th Cir. 2003); Gutierrez v. Lynch, 826 F.2d 1534, 1538 (6th Cir. 1987). The plaintiff's complaint simply fails to plead sufficient facts concerning Defendant Graves that would permit the Court to draw a reasonable inference that Graves is liable for any alleged constitutional misconduct. As such, the plaintiff's complaint fails to state a constitutional claim for relief against Graves which is plausible on its face, and his claims against her in her individual capacity warrant dismissal. Iqbal, 556 U.S. at 662; Twombly, 550 U.S. at 570. To the extent that the complaint can be read to assert a state law claim against Graves, the Court should decline to extend supplemental jurisdiction over any such claim for the reason set out supra, at Section III(A).

26

The plaintiff's claims against Defendant Graves in her official capacity are treated as claims against the entity of which she is an officer, presumably the City of Gallatin. See Kentucky v. Graham, 473 U.S. at 166; Monell., 436 U.S. at 691 n.55; Lambert v. Hartman, 517 F.3d 433, 440 (6th Cir.2008), cert. denied, 555 U.S. 1126, 129 S.Ct. 905, 173 L.Ed.2d 158 (2009). A municipal defendant cannot be deemed liable simply because one of its employees committed a constitutional wrong. See Monell, 436 U.S. at 691; Berry v. City of Detroit, 25 F.3d 1342, 1345 (6th Cir. 1994). For the City of Gallatin to be found liable under Section 1983, the plaintiff must set forth facts in his complaint upon which municipal liability can be found. This requires a showing that the misconduct complained of came about pursuant to a policy, statement, regulation, decision or custom promulgated by the City of Gallatin. Monell, 436 U.S. at 690-91; Matthews v. Jones, 35 F.3d 1046, 1049 (6th Cir. 1994). In short, there must be a direct causal link between an official policy or custom of the City of Gallatin and an alleged constitutional violation. Otherwise, a Section 1983 claim will not lie. See City of Canton v. Harris, 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989); Doe v. Claiborne Cnty., Tenn., 103 F.3d 495, 507-09 (6th Cir. 1996). The plaintiff's pleadings simply do not contain any factual allegations that support a municipal liability claim. His allegations that the City of Gallatin has far reaching policies which promote wrongdoing and which are behind the alleged constitutional violations at issue are conclusory and self-serving. Accordingly, the plaintiff's claims against Defendant Graves in her official capacity warrant dismissal for failure to state a claim upon which relief can be granted.

With respect to Defendants Stinson and Washburn, the Court finds that the plaintiff's pleadings, while certainly not a model of clarity, are sufficient to satisfy the pleading requirements to state a constitutional claim against them in their individual capacities upon which relief can be

Case 3:11-cv-00867   Document 120   Filed 06/07/12   Page 27 of 48 PageID #: 876

granted.[8] The plaintiff's allegations that he was wrongfully arrested and that excessive force was used against him during the course of the arrest are sufficient to put Defendants Stinson and Washburn on notice of the plaintiff's constitutional claims against them. However, to the extent that the plaintiff makes claims of "personal tort," libel, and racial discrimination, these claims warrant dismissal because the plaintiff's assertion of these claims is conclusory and he fails to set forth any factual allegations to support claims under these theories.

Even though the plaintiff has satisfactorily pled false arrest and excessive force claims, given the facts that have been alleged by the plaintiff, these claims cannot be heard by this Court at this time. At no point does the plaintiff indicate that the charges on which he was arrested on June 26, 2011, have been resolved. As such, the Court must assume that the criminal charges remain pending and that the state criminal proceedings are ongoing. The issues involved in resolving the plaintiff's Section 1983 claims are intertwined with the criminal charges in the pending state proceedings, which include a charge of evading arrest, and, thus, this Court should abstain from hearing the plaintiff's civil challenges in accordance with Younger v. Harris, supra. See Carroll v. City of Mount Clemens, 139 F.3d 1072, 1075 (6th Cir.1998); Schilling v. White, 58 F.3d 1081, 1084 (6th Cir.1995); Skidmore v. Henley, 2008 WL 4587451 (E.D. Ky. Oct. 15, 2008). Because the plaintiff was charged with evading arrest in addition to other charges, it is appropriate to apply the abstention rule of Younger to his claim of excessive force during the arrest. See Lewis v. Hill, 2012 WL 652445 (W.D. La. Jan. 12, 2012).

---

[8] Claims against Stinson and Washburn in their official capacities as officers of the Gallatin Police Department warrant dismissal for the same reasons as the claims against Defendant Graves.

H. Motion to Dismiss of Defendants James Hunter, Mahailiah Hughes, Jennifer Rasnick, Sonny Weatherford, Don Franklin, Sonya Troutt, and Tina Moore (Docket Entry No. 92)

The plaintiff makes numerous allegations against these seven defendants. After review of the Defendants' motion and the plaintiff's responses in opposition (Docket Entry Nos. 99-101 and 115-116), the Court finds that the motion to dismiss should be granted.

Defendant Hunter is a Sumner County General Sessions Judge who is alleged to have made probable cause determinations for criminal charges against the plaintiff and to have set the amount of bond for the plaintiff at some point in the criminal proceedings. See Freeman I, Complaint, at 10, 18, and 28; Freeman II, Complaint, at 9 and 14. The plaintiff alleges that Defendant Hunter committed various forms of judicial misconduct and wrongdoing in carrying out these actions. Id. The Court's review of the allegations and claims made by the plaintiff against Defendant Hunter reveals that the actions complained about by the plaintiff were taken by Defendant Hunter in his role as a state judicial officer and are actions to which absolute judicial immunity applies. There is no basis in either the record or from the plaintiff's response in opposition (Docket Entry No. 101) for treating the claims against Defendant Hunter any differently than the claims brought against Defendant Gay. Accordingly, for the reasons set out supra at Section III(C), all claims against Defendant Hunter warrant dismissal.

Defendant Franklin served as the foreman of the Sumner County Grand Jury which issued indictments against the plaintiff. The plaintiff alleges that Defendant Franklin wrongfully and falsely issued indictments against the plaintiff for the DUI and drug charges for which the plaintiff was ultimately acquitted in October 2010, and September 2011, respectively. See Freeman II, Complaint at 17-18. The plaintiff alleges that Defendant Franklin issued the indictments based upon perjured testimony and despite a lack of probable cause for the charges and did so in an effort to

29

extort money from criminal defendants for the benefit of the government. Id. The Court's review of the plaintiff's allegations and the record in this action shows that the plaintiff's claims against Defendant Franklin are based solely upon acts that Franklin took in his duties as a grand juror and as the grand jury foreman. However, quasi-judicial immunity protects members of grand juries for acts taken in their roles as grand jurors. See Imbler, 424 U.S. at 423 n.20. The plaintiff has not set forth in his response in opposition (Docket Entry No. 116) any persuasive basis for why quasi-judicial immunity should not apply. Accordingly, the plaintiff's claims against Defendant Franklin for personal liability under Section 1983 warrant dismissal. For essentially the same reasons as has been set out herein with respect to the other defendants, supra, at Sections III(A)and III(C), the plaintiff's official capacity claims against Defendant Franklin, his claims for declaratory and injunctive relief, and any state law claims warrant dismissal.

Defendants Hughes and Rasnick are the Clerk and a deputy clerk, respectively, of the Sumner County Circuit Court. The plaintiff alleges that both defendants engaged in wrongful and illegal actions[9] when they issued an Execution and Garnishment of Judgment to the plaintiff in the amount of $1,024.14 on October 14, 2011, for costs and/or fees arising from the September 27, 2011, criminal judgment rendered against the plaintiff for violating the implied consent law. See Freeman II, Complaint, at 19. The plaintiff contends that written judgment for this conviction, as well as for his acquittal on the DUI charge, do not list any costs or fees that are to be assessed against him. The plaintiff alleges that Defendant Hughes is also guilty of conspiring to issue false indictments against him because the purportedly false True Bills were filed by the clerk's office. Id.

---

[9] The plaintiff contends that Defendants Hughes and Rasnick committed extortion, embezzlement, personal torts, account fraud, malpractice, theft, and financial harm.

Review of the plaintiff's allegations and the record shows that the actions of Defendants Hughes and Rasnick about which the plaintiff complains are actions taken by them in the performance of public, judicial functions and are actions for which they are protected by quasi-judicial immunity. See Foster v. Walsh, 864 F.2d 416, 418 (6th Cir. 1988); Lyle, supra; Bush, supra; Jonaitis, supra; McLynas v. Tennessee, 2007 WL 404706 (E.D. Tenn. Feb. 2, 2007) (Clerk of Court entitled to quasi-judicial immunity for the assessment of court costs and fees alleged to be unconstitutional). The plaintiff has not set forth in his response in opposition (Docket Entry No. 115) any persuasive basis why quasi-judicial immunity should not apply to these two defendants. Accordingly, the plaintiff's claims against Defendants Hughes and Rasnick for personal liability under Section 1983 warrant dismissal. For essentially the same reasons as has been set out herein with respect to the other defendants, supra, at Sections III(A) and III(C), the plaintiff's official capacity claims against Defendants Hughes and Rasnick, his claims against them for declaratory and injunctive relief, and any state law claims against them warrant dismissal.

Defendant Moore is a deputy with the Sumner County Sheriff's Office. Her sole involvement with the plaintiff is that she is alleged to have served the October 14, 2011, Execution and Garnishment of Judgment. See Freeman II, Complaint, at 19. After review of the motion to dismiss and the plaintiff's response in opposition (Docket Entry No. 115), the Court finds that Defendant Moore should be dismissed from the action. The plaintiff's complaint simply fails to set out any factual allegations of wrongdoing against Defendant Moore which support a cognizable claim for relief under Section 1983. Despite the plaintiff's conclusory rhetoric of wrongdoing on the part of Moore, he does not set out how she violated any constitutional protection, and it escapes the Court how the mere act of serving the Execution and Garnishment of Judgment rises to the level

31

of a constitutional violation. The plaintiff's allegations against Defendant Moore do not refer to state law claims. However, to the extent that the complaint can be read to assert any state law claims against her, the Court should decline to extend supplemental jurisdiction over any such claims for the reason set out supra, at Section III(A).

Defendant Weatherford is the Sumner County Sheriff. The only allegations made against him are that he violated the plaintiff's constitutional rights "by conspiring in kidnapping and 8th amend. violations in the unlawful detention of pltf. and personal tort of waton (sic)." See Freeman II, Complaint, at 18. According to the plaintiff, he was not released from the Sumner County Jail after his acquittal on the DUI charge yet Jail records show that he was "closed/and discharged out of the" Jail on September 28, 2011, id., which he asserts should have resulted in his release. Id.

After review of the defendant's motion and the plaintiff's response in opposition (Docket Entry No. 99), the Court finds that Defendant Weatherford should be dismissed from the action. As set out supra at Section III(G), there can be no basis for a personal liability claim against a defendant under Section 1983 without facts showing his personal involvement in violating the plaintiff's constitutional rights. The plaintiff has not set forth any factual allegations in his complaint showing the personal involvement of Defendant Weatherford in the alleged wrongdoing, and Weatherford cannot be held personally liable under Section 1983 merely because of his position as the Sumner County Sheriff. Similarly, there are also no factual allegations contained in the complaint which support an official capacity claim against Defendant Weatherford as the representative of Sumner County, the entity for whom he is employed and the entity against whom an official capacity claim is actually brought. See supra, at Section III(G). Furthermore, the plaintiff's own pleadings show that at the time of his acquittal on the DUI charge, he was also being

detained on other criminal charges for which he was unable to make the bond that was in place at the time. See Freeman II, Complaint, at 46-48. The legality of the plaintiff's continued confinement at the Jail is simply not a matter to be determined by what is included in the computer printout of the plaintiff's resident history at the Jail. The plaintiff's allegations against Defendant Weatherford do not refer to state law claims. However, to the extent that the complaint can be read to assert any state law claims against him, the Court should decline to extend supplemental jurisdiction over any such claims for the reason set out supra, at Section III(A).

Defendant Troutt is the Sumner County Jail Administrator. In Freeman I, the plaintiff alleges that Troutt violated his equal protection rights and retaliated against him by not permitting him to become a trustee or to be placed in rehabilitation programs, violated his rights in some manner for an "incident 8-20-11," placed him on administrative segregation without due process, and prevented him from having "t.v. educational programming" for 25 months. See Freeman I, Complaint at 31. In Freeman II, the plaintiff alleges that Troutt was involved in illegally detaining the plaintiff at the Jail after his acquittal on the DUI charge and that he was prevented from making a telephone call to contact his family after his acquittal in order to obtain his release. See Freeman II, Complaint at 16.

After review of the defendant's motion and the plaintiff's response in opposition (Docket Entry No. 100), the Court finds that Defendant Troutt should be dismissed from the action. Several of the plaintiff's factual allegations simply fail to state constitutional claims. A prison inmate has no right under the Constitution to have access to "t.v. educational programming." See Rawls v. Sundquist, 929 F.Supp. 284 (M.D. Tenn. 1996) (Campbell, J.); Mize v. Woosley, 2010 WL 4323073 (W.D. Ky. Oct. 26, 2010) (no constitutional right to watch television while in jail). There is no

33

general right for an inmate to be able to make a telephone call from jail to a family member at any particular time.  See Harrill v. Blount Cnty., Tenn., 55 F.3d 1123, 1125 (6th Cir. 1995); Tucker v. Randall; 948 F.2d 388, 390-91 (7th Cir. 1991).  There is also no right for prison inmates to be given trustee status, Coffee–Smith v. Shipley, 65 Fed. Appx. 912, 913 (4th Cir. 2003); Cayce v. George, 2011 WL 6754067 (M.D. Tenn. Dec. 23, 2011) (Sharp, J.), or to be involved in rehabilitative programs.  See Carter v. Corrections Corp. of Am., 1999 WL 427352 (6th Cir. June 15, 1999) (no constitutionally cognizable right to rehabilitative programs).[10]

Several of the plaintiff's claims, while touching upon recognized constitutional protections, are simply not supported by factual allegations which are sufficient to state arguable claims.  The plaintiff's own pleadings show that his placement on administrative segregation lasted from July 10, 2010, to October 12, 2010.  See Freemen I, Docket Entry No. 1, at 63.  Mere allegations of a short term placement in administrative segregation are insufficient to show that the plaintiff suffered the type of atypical and significant hardship necessary to state a constitutional claim.  See Sandin v. Conner, 515 U.S. 472, 483-84, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995); Chapman v. Troutt, 2011 WL 4396189 (M.D. Tenn. Sept. 21, 2011) (Haynes, J.) (pre-trial detainee's rights not violated by a 14 month placement in administrative segregation at county jail).  Additionally, the plaintiff's assertions that he was denied prison privileges or unfairly treated in violation of his equal protection rights or in retaliation for exercising his First Amendment rights are conclusory and fail to state an arguable claim because his pleadings are devoid of any factual allegations which show that he was subjected to retaliatory or discriminatory treatment, let alone that such treatment was the result of actions taken personally by Defendant Troutt.  Conclusory allegations of unconstitutional conduct

_____

[10] The plaintiff's reference to an "incident" on August 20, 2011, is unsupported by any factual context and obviously fails to state a claim upon which relief can be granted.

34

without specific factual allegations fail to state a claim under Section 1983. See Iqbal, 556 U.S. at 678-79; Twombly, 550 U.S. at 555. The Court is not required to conjure up unpled allegations to support conclusory claims. See Wells v. Brown, 891 F.2d 591, 594 (6th Cir. 1989). As set out supra at 32-33, there is no support in the plaintiff's pleadings for a claim that he was illegally confined subsequent to his acquittal on the DUI charge.

Because the Court finds no support for constitutional claims against Defendant Troutt, the Court should decline to extend supplemental jurisdiction over any such claims for the reason set out supra, at Section III(A).

### I. Motion to Dismiss of Defendants Daniel Steakin, Kris Ford, and Bobby Harris (Docket Entry No. 112)[11]

Defendants Steakin and Ford are the Gallatin Police Officers who arrested the plaintiff on September 14, 2008, on the DUI charge for which the plaintiff was acquitted after a jury trial on September 27, 2011. With respect to Defendant Steakin, the plaintiff asserts that:

> On 9'27'11 [plaintiff] was acquitted following a 9'14'08 arrest of DUI 1st. This [defendant] is guilty of a personal tort, false arrest, false imprisonment, malicious harassment, violation of [plaintiff's] fourth amend. by conducting an illegal search of [plaintiff's] truck without [plaintiff's] consent and libel for filing a false police report and aggravated perjury in a court of law during testimony.

See Freeman II, Complaint at 15. With respect to Defendant Ford, the plaintiff asserts that:

> On 9'27'11 this defendant is guilty of libel, personal tort, slander, fraudulent, tampering with evidence and aggravated perjury against [plaintiff] the assisting officer following the unlawfully profiling DUI arrest in which [plaintiff] was just acquitted on.

---

[11] The motion of Defendants Steakin, Ford, and Harris was filed on April 17, 2012. The plaintiff has not filed a response in opposition to the motion.

35

Id.

Several of the plaintiff's claims asserted against the two defendants simply fail to state constitutional claims under Section 1983. The plaintiff provides no factual support for his vaguely phrased claim of "personal tort" and fails to show how this claim implicates a constitutional protection and thus states a claim under Section 1983. Similarly, the plaintiff fails to set out any factual allegations in support of his claims of fraudulent tampering with evidence or malicious harassment, and the Court is left to guess the factual underpinnings of these claims.[12] The plaintiff's allegations of slander and libel fail to state constitutional claims because slander and libel are not actionable under Section 1983. See Paul v. Davis, 424 U.S. 693, 701-03, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976); Ellis v. Jeffersonian Newspaper, 1989 WL 136141 (6th Cir. Nov. 13, 1998); Azar v. Conley, 456 F.2d 1382, 1389 (6th Cir.1972). See also Jarrett v. Township of Bensalem, 312 Fed.Appx. 505, 507, 2009 WL 418623 (3d Cir. Feb. 20, 2009) ("[T]he mere existence of an allegedly incorrect police report fails to implicate constitutional rights.").

The plaintiff's claims of illegal search, false arrest, and false imprisonment warrant dismissal as a matter of law as untimely filed. As set out supra, at Section III(B), a one year statute of limitations applies to the plaintiff's claims brought under 42 U.S.C. § 1983. Because the plaintiff's complaint was filed on November 15, 2011, his Section 1983 claims must have accrued no earlier

---

[12] To the extent that the plaintiff's claim of "malicious harassment" can be liberally construed as a federal claim for malicious prosecution, the Sixth Circuit has held that police officers "cannot be held liable for malicious prosecution when [they] did not make the decision to prosecute [the plaintiff]." McKinley v. City of Mansfield, 404 F.3d 418, 444 (6th Cir. 2005) (quoting Skousen v. Brighton High Sch., 305 F.3d 520 (6th Cir. 2002)) (internal citation marks omitted). The plaintiff does not set forth any facts which support a claim that either Defendant Steakin or Ford had any involvement in the decision to prosecute the plaintiff on the DUI charge, a matter normally attributable to the prosecutor.

36

than November 15, 2010, in order to have been timely filed. The plaintiff's Fourth Amendment illegal search claim is based on events occurring on September 14, 2008. This claim accrued on September 14, 2008, since the plaintiff was aware on that date of the injury forming the basis of his claim. See Price v. Philpot, 420 F.3d 1158, 1162 (10th Cir. 2005); Ruff, supra. Likewise, claims for false arrest and false imprisonment under Section 1983 accrue at the time of the arrest or no later than the first judicial proceeding subsequent to arrest. See Wallace v. Kato, 549 U.S. 384, 388-91, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007); Fox v. Desoto, 489 F.3d 227, 233 (6th Cir. 2007). Accrual of these claims does not depend upon the termination of criminal charges in favor of a plaintiff but begins at the time when a plaintiff becomes detained pursuant to the legal process. Wallace, 549 U.S. at 397. It is at this time when the claim is complete and can be pursued as a legal cause of action. 549 U.S. at 390. Although the date of the first judicial proceeding subsequent to the DUI arrest is not readily apparent from the plaintiff's complaint, it is a reasonable assumption that it occurred at some time shortly after his arrest and certainly well before November 15, 2010, which is more than two years after the arrest.

To the extent that the plaintiff seeks to bring a claim against either defendant based on allegations that they perjured themselves by falsely testifying in court proceedings, such a claim, even if the underlying allegation of false testimony is accepted as true, is barred by the doctrine of witness immunity. See Burns v. Reed, 500 U.S. 478, 489–92, 111 S.Ct. 1934, 1941–42, 114 L.Ed.2d 547 (1991) (witnesses absolutely immune from damages for making false or defamatory statements in judicial proceedings; immunity extends to any hearing before a tribunal that performs a judicial function); Briscoe v. LaHue. 460 U.S. 325, 345–46, 103 S.Ct. 1108, 1121, 75 L.Ed.2d 96 (1983)

(Congress, in enacting Section 1983, did not abrogate common-law absolute immunity afforded to witnesses for alleged false testimony in a judicial proceeding).

For essentially the same reasons as has been set out herein with respect to the other defendants, supra, at Sections III(A), III(C), and III(G), the plaintiff's official capacity claims against Defendants Steakin and Ford, his claims for declaratory and injunctive relief, and any state law claims warrant dismissal.

With respect to Defendant Bobby Harris, the plaintiff alleges that, during May of 2011, Harris stalked him and attempted to bribe another individual to help and conspire "in entrapping" the plaintiff. See Freeman II, Complaint at 18. The plaintiff brings claims of "personal tort," malicious harassment, and intentional mischief against Defendant Harris. Id. The plaintiff does not allege that Defendant Harris' actions during May 2011, resulted in an arrest, seizure, or any other type of actual infringement or injury to the plaintiff. The plaintiff's allegations, even if taken as true, simply fail to set forth a cognizable constitutional claim. Allegations of petty harassment, police surveillance, and entrapment do not state constitutional claims under Section 1983. See Mays v. City of Dayton, 134 F.3d 809, 816-17 (6th Cir. 1998); Giovanetti v. Tomasi, 1994 WL 198188 (6th Cir. May 19, 1994); (no constitutional right to be free from entrapment); Emmons v. McLaughlin, 874 F.2d 351 (6th Cir. 1989); Vasquez v. City of Hamtramck, 757 F.2d 771, 773 (6th Cir. 1985). Additionally, the Court is not required to speculate as the nature of potentially viable claims based on the plaintiff's allegations. See League of United Latin Am. Citizens, supra. Accordingly, the motion to dismiss as to Defendant Harris should be granted.

J. Motion to Dismiss of Defendants Rick Cooper and Sherry Taft (Docket Entry No. 17)

The plaintiff's claims against Defendants Cooper and Taft consist of a string of conclusory allegations and disjointed factual assertions. See Freeman I, Complaint, at 28. The plaintiff contends that Defendant Cooper "called pltf. liar in front of atty," that the defendants "went off on pltf. bond before scheduled court date" and "conspired with the courts to go off my bond [and] keep my money on a (non-existing contraband offense),"and violated the plaintiff's Fourth, Eighth, and Fourteenth Amendment rights. Id. There are no allegations in the complaint that either defendant took any steps to arrest the plaintiff, used force against him, or otherwise took any actions to physically seize or otherwise restrain him.

After review of the defendants' motion and the plaintiff's response in opposition (Docket Entry No. 76), the Court finds that the motion to dismiss should be granted. Defendants Cooper and Taft are clearly not state actors but are employees of a private bail bond company. 42 U.S.C. § 1983 makes liable only those who, while acting under color of state law, deprive another of a right secured by the Constitution or federal law. Flagg Bros., Inc., supra.; Chapman v. Higbee Co., 319 F.3d 825, 833 (6th Cir.2003) (en banc); Wolotsky v. Huhn, 960 F.2d 1331, 1335 (6th Cir.1992). Although a private actor can act under color of state law for the purposes of Section 1983 in some factually specific situations, the actor's conduct must be "fairly attributable to the state." Lugar v. Edmondson Oil Co., 457 U.S. 922, 947, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982).

The Court simply cannot discern from the plaintiff's allegations a viable claim for relief under Section 1983 against Defendants Cooper or Taft. Even if Defendant Cooper called the plaintiff a liar, this act does not violate the plaintiff's constitutional rights because allegations of slander simply cannot form the basis for a claim under Section 1983. Paul, supra; Azar, supra.

39

Further, a fair reading of his other allegations shows that his complaints about the amount of the bail that was set for him, the need for bail, the continuance of the bail, and/or the requirement of a urinalysis by the Court, are all, in essence, complaints about decisions made by the state court overseeing his criminal cases. Although the plaintiff repeatedly makes reference to violations of his constitutional rights, he fails to show how these two defendants personally deprived him of any constitutional right or how they took action under color of state law.[13] These defendants do not become liable under Section 1983 merely because the plaintiff was unsatisfied with his bail situation on the state charges or believed that continued bail was unnecessary. See Hassink v. Motti, 47 Fed. Appx. 753, 2002 WL 31181983 (6th Cir. Sep. 30, 2002) (private bail bondsman did not deprive plaintiff of federal right or act under color of state law when plaintiff could not obtain a bond because of statements made by the bondsman); Galka v. Cole, 2011 WL 3862366 (E.D. Mich. July 18, 2011) (bail bondman is not a state actor under Section 1983 despite plaintiff's allegations of constitutional wrongdoing).

Because the Court finds no support for constitutional claims against Defendants Cooper and Taft, the Court should decline to extend supplemental jurisdiction over any such claims for the reason set out supra, at Section III(A).

---

[13] In determining whether the plaintiff has stated a claim for relief, this Court notes that it is not "required to conjure up questions never squarely presented to them or to construct full blown claims from sentence fragments. To do so would require the courts to explore exhaustively all potential claims of a pro se plaintiff, and would transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." Dixie v. Ohio, 2008 WL 2185487, at *1 (N.D. Ohio May 23, 2008) (quoting Beaudett v. City of Hampton, 775 F.2d 1274, 1277 (4th Cir. 1985)) (internal quotations omitted).

<u>K. Plaintiff's Motions to Amend (Docket Entry Nos. 8 in both cases)</u>

The plaintiff has filed two motions to amend his original pleadings. In his first motion, he sets out new claims against Jana Smith, Tina White, and Court Officer Sgt. Gilly, and makes additional factual allegations supporting his original claims. Smith and White are victim's witness coordinators whom the plaintiff alleges failed to contact him, support him, or provide him with victim's compensation benefits as required by state law. The plaintiff does not specifically set out any claims or factual allegations against Gilly. <u>See</u> Docket Entry No. 8 in <u>Freeman I</u>. In his second motion, the plaintiff seeks to add claims against Cumberland Mental Health Center employees Megan Bennett and Dr. Shawberry based on events related to the plaintiff's mental health treatment at the Cumberland Mental Health Center in November 2011. <u>See</u> Docket Entry Nos. 8 and 10 in <u>Freeman II</u>.

Although both of the plaintiff's motions were filed within the time frame permitting him to amend his pleadings once as a matter of course pursuant to Rule 15(a)(1), the Court is nonetheless not required to allow amendments that assert obviously frivolous claims or claims that could not withstand a motion to dismiss. <u>Kottmyer v. Maas</u>, 436 F.3d 684, 692 (6th Cir. 2006); <u>Miller v. Calhoun Cnty.</u>, 408 F.3d 803, 817 (6th Cir. 2005); <u>Thiokol</u>, 987 F.2d 376 (6th Cir. 1993); <u>Marx v. Centran Corp.</u>, 747 F.2d 1536, 1550 (6th Cir. 1984); <u>Neighborhood Development v. Advisory Council on Historic Preservation</u>, 632 F.2d 21, 23 (6th Cir. 1980). Additionally, because this action was filed <u>in forma pauperis</u>, the Court must take into account the directives of 28 U.S.C. § 1915(e)(2), which provides in mandatory language that the Court "shall dismiss the case at any time" if the Court determines that the action fails to state a claim on which relief may be granted.

With respect to Jana Smith and Tina White, the plaintiff fails to show a plausible claim that these two individuals violated his constitutional rights. The mere failure of state employees to comply with state law does not create constitutional liability. See Harrill v. Blount Cnty., 55 F.3d 1123, 1125 (6th Cir. 1995). The plaintiff's allegations of discriminatory treatment by Smith and White are conclusory and unsupported by any factual allegations that raise an inference of unconstitutional actions on their part. With respect to "Court Officer Sgt. Gilly," the proposed amendment fails to set forth any specific claims or any factual allegations against Gilly, and thus clearly fails to state a claim against Gilly. With respect to Megan Bennett and Dr. Shawberry, the claims against these two defendants are based on alleged events which recently occurred and which have no connection to the claims or factual allegations that are at issue in the consolidated actions. There is no reason to permit additional defendants to be brought into the consolidated actions based on new and unrelated factual allegations.[14]

To the extent that the plaintiff intends for his proposed amendments to provide additional factual allegations supporting the already existing claims against the 25 originally named defendants or new claims against these defendants, the Court has reviewed the proposed amendments and finds that the allegations in the proposed amendments do not set forth any allegations that are not already contained in the plaintiff's original pleadings or that are not essentially a re-hashing or continuance of the claims and allegations made in the original pleadings.

---

[14] The plaintiff also requests in his motion to amend in Freeman I that Gregory Valentine be added as a co-plaintiff. See Docket Entry No. 8, at 8. However, Mr. Valentine did not join in the motion, and the Court will thus not consider the request made by the plaintiff.

42

The plaintiff seeks preliminary injunctive relief compelling Defendants Gay and James to either take specific actions or refrain from taking specific actions in the plaintiff's criminal proceedings. The foundation for his motion consists of essentially the same allegations of wrongdoing that he makes in his pleadings. Defendants Gay and James have responded in opposition to the motion. See Docket Entry Nos. 83-84.

Preliminary injunctions are governed by Rule 65(a) of the Federal Rules of Civil Procedure and are preventive, prohibitory, or protective measures taken pending resolution on the merits. See Clemons v. Board of Educ of Hillsboro, Ohio, 228 F.2d 853, 856 (6th Cir. 1956). Preliminary injunctions are considered extraordinary relief, the issuance of which requires great caution, deliberation and sound discretion. Detroit Newspaper Publishers Ass'n v. Detroit Typographical Union No. 18, Int'l Typographical Union, 471 F.2d 872, 876 (6th Cir. 1972).

In determining whether to grant the plaintiff's requests for preliminary injunctive relief, this Court must consider: (1) the plaintiff's likelihood of prevailing on the merits of the case; (2) whether the plaintiff will suffer irreparable injury if the injunction is not granted; (3) whether granting the injunction will cause potential harm to others; and (4) the impact of the injunction upon the public interest. Leary v. Daeschner, 228 F.3d. 729, 736 (6th Cir. 2000); Parker v. U.S. Dep't of Agric. 879 F.2d. 1362, 1367 (6th Cir. 1989); Mason Cnty. Med. Assocs. v. Knebel, 563 F.2d 256, 261 (6th Cir. 1977). These factors "do not establish a rigid and comprehensive test for determining the appropriateness of preliminary injunctive relief," Frisch's Rest. Inc. v. Shoney's, Inc., 759 F.2d 1261, 1263 (6th Cir. 1984), nor is any one factor controlling. Gonzales v. National Bd. of Med. Examiners, 225 F.3d 620, 625 (6th Cir. 2000).

43

The plaintiff's motion for preliminary injunctive relief should be denied. As set out herein, the majority of the plaintiff's claims warrant dismissal and he has little likelihood of success on the merits of his claims. The plaintiff has also not shown that he will suffer irreparable harm if the injunctive relief is not granted. The balancing of harms required by the third factor does not weigh significantly in favor of the requested relief, and the plaintiff has not demonstrated that a public interest would be advanced by the requested relief as is required for the fourth factor. National Hockey League Players Ass'n v. Plymouth Whalers Hockey Club, 372 F.3d 712, 720 n.4 (6th Cir. 2003).

Finally, the plaintiff seeks the active intervention of this Court in his ongoing state criminal proceedings. However, federal courts generally abstain from intervening in pending state criminal proceedings. See Younger, supra. The plaintiff has not shown the existence of extraordinary circumstances which justify disregarding the principle of Younger abstention. He has certainly not shown that injunctive relief is necessary to prevent immediate and great irreparable injury, Younger, 401 U.S. at 46, and his argument that there is not an adequate opportunity in the state judicial proceedings to raise his constitutional challenges and his assertions of bad faith, harassment, flagrant unconstitutionality, and unusual circumstances are self-serving and meritless.

The plaintiff has failed to meet his burden of showing that the facts and circumstances of this action demand the extraordinary remedy of a preliminary injunction. Overstreet v. Lexington-Fayette Urban Cnty. Govt., 305 F.3d 566, 573 (6th Cir. 2002).

The plaintiff has also filed a motion for review. This motion does not actually seek review, pursuant to Rule 72(a) of the Federal Rules of Civil Procedure, of any specific order entered by the Court. Instead, the plaintiff's motion essentially re-alleges facts and claims set out in his pleadings

and seeks the Court's "review" of his claims and asks that his claims be forwarded to investigative agencies. <u>See</u> Docket Entry No. 13, at 4. The plaintiff's claims are already before the Court pursuant to his pleadings, and this Court declines to take a role in referring any matters to investigative authorities. Accordingly, the plaintiff's motion for review should be denied.

<u>M. Claims against Defendants Riker and Morin</u>

Although Defendants Sgt. Riker and Sgt. Morin have not filed motions to dismiss, 28 U.S.C. § 1915(e)(2) provides in mandatory language that the Court "shall dismiss the case at any time" if the Court determines that the action fails to state a claim on which relief may be granted. After the comprehensive review of the record that was required for the Court's analysis of the numerous pending motions, the Court finds that the claims against these two defendants also warrant dismissal for failure to state a claim upon which relief can be granted.

Defendant Riker is alleged to have called the plaintiff "a known drug dealer and convicted felon" while the plaintiff was performing his inmate job duties at the Sumner County Jail and to have

either escorted the plaintiff from the area or "confirmed" direct orders from Defendant Gay that he was to be escorted from the premises. <u>See</u> <u>Freeman I</u>, Complaint, at 30. Defendant Morin is alleged to have prevented the plaintiff from making a telephone call, denied him dinner on one occasion, and "stopped" the plaintiff's family from posting his bail "behind Judge Gray['s] orders." <u>Id.</u> Even if these factual allegations are taken as true, they do not support a claim that these defendants violated any constitutional right enjoyed by the plaintiff. As noted herein, allegations of a defendant's oral statements or a missed telephone call do not support claims under Section 1983.

45

See supra, at 33-34 and 36.  Further, a claim based on a single missed meal does not rise to the level of a constitutional claim, and the plaintiff's own allegations are that any events related to his bail were based on decisions or directives made by Defendant Gay, not by Defendants Riker or Morin. The plaintiff has not shown the violation of any cognizable constitutional right with respect to these two defendants.  The Constitution is simply not violated by every event to which the plaintiff objects.  De minimis wrongdoing and petty harassment do not implicate the Constitution.  See Vasquez v. City of Hamtramck, 757 F.2d 771, 773 (6th Cir. 1985).[15]

### N. Defendant "Nurse Litisha"

Process was issued to this defendant on October 12, 2011, but was returned unexecuted.  See Docket Entry No. 54.  Pursuant to Rule 4(m) of the Federal Rules of Civil Procedure, because this defendant has not been served with process within 120 days of the date the action was filed, the claims against her should be dismissed without prejudice unless the plaintiff shows good cause for why service has not been timely made.

### RECOMMENDATION

Based on the foregoing, the Court respectfully RECOMMENDS that:

1. the plaintiff's motions to amend (Docket Entry Nos. 8 in Freeman I and Freeman II) be DENIED;

2. the plaintiff's motion for review (Docket Entry No. 13) be DENIED;

---

[15]Defendant Babbitt has also not filed a motion to dismiss.  However, unlike the claims against Defendants Riker and Morin, the factual allegations against Babbitt are not so readily lacking that they are subject to sua sponte dismissal under Section 1915(e)(2) for failure to state a claim for relief.

3. the plaintiff's motion for injunctive relief (Docket Entry No. 77) be DENIED;

4. the motions to dismiss of Rick Cooper and Sherry Taft (Docket Entry No. 17), Dee David Gay (Docket Entry No. 22), Sidney Preston (Docket Entry No. 31), Lytle J. James (Docket Entry No. 33), Steve Daniel (Docket Entry No. 56); Jo Ann Graves (Docket Entry No. 61), Don Franklin, Mahailiah Hughes, James Hunter, Jr., Tina Moore, Jennifer Rasnick, Sonya Troutt, and Sonny Weatherford (Docket Entry No. 92), Lawrence Ray Whitley (Docket Entry No. 94), Rhonda Martin (Docket Entry No. 97), and Christopher Ford, Bobby Harris, and Daniel Steakin (Docket Entry No. 112) be GRANTED and these defendants be DISMISSED WITH PREJUDICE from the action;

5. the motion to dismiss of Gregory Washburn and James Stinson (Docket Entry No. 61) be GRANTED as to the plaintiff's official capacity claims and any state law claims against Defendants Washburn and Stinson and these claims be DISMISSED WITH PREJUDICE. With respect to the plaintiff's constitutional claims against these defendants in their individual capacities, the motion should be DENIED, the Court should ABSTAIN from hearing these claims during the pendency of the current criminal proceedings against the plaintiff, and the proceedings on these claims should be STAYED until the conclusion of the state proceedings. See Michel v. City of Akron, 272 Fed. Appx. 477, 2008 WL 2077868 (6th Cir. May 15, 2008) (although Younger abstention applied to federal civil action for damages because pending state criminal proceeding, federal case should be stayed until resolution of the state proceedings and not dismissed without prejudice);

6. the claims against Defendants Adriel Riker and Lawrence Morin be DISMISSED WITH PREJUDICE pursuant to 28 U.S.C. § 1915(e)(2) for failure to state a claim on which relief can be granted;

47

7. Defendant "Nurse Litisha" be DISMISSED WITHOUT PREJUDICE pursuant to Rule 4(m) of the Federal Rules of Civil Procedure for failure to be served with process in this action; and

8. the Court DECLINE to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c)(3) over any state law claims asserted in this action.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of the Report and Recommendation upon the party and must state with particularity the specific portions of this Report and Recommendation to which objection is made. Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation. See Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,


JULIET GRIFFIN
United States Magistrate Judge

48